Good morning, Your Honors. I am Alan Aghabian, and may it please the Court, excuse me, I'm Rupian on behalf of the Petitioner. You know, this matter comes before this Court based on an IJA's denial of Petitioner's application for asylum and withholding. As the IJA made no adverse credibility finding, the Petitioner's credibility is not at issue and his testimony is deemed credible. Petitioner, Your Honors, is a native of Azerbaijan. He was born there, he lived there, he worked there, he raised his family there, and he left there in 1990 after the ethnic cleansing programs that began in Azerbaijan. Those facts are not at issue. The immigration judge himself admitted that those facts are credible and are deemed to be truthful. The denial of the Petitioner's asylum application, Your Honors, is mainly stemmed from the IJA's finding that he was firmly resettled in Armenia. Now, initially, I submit that it's clear that the IJA used the wrong standard and the wrong burden of proof in coming up with that conclusion. In his opinion, Your Honors, if I may address the Court's attention, in his decision, he states that the question of which litigant has the burden of proof to go forward first on his issue is not critical to this case since both sides presented evidence on the issue of resettlement. So in essence, he asks that both sides present evidence and then he weighs the evidence to find which one. Did the government raise firm resettlement at the hearing? They did not, Your Honor. Who raised it? The judge did. And, in fact, Your Honors, if you know, there's several, and Judge Bank does this a lot off the record, there's a lot of discussions off the record when matters are continued, there's a missing several hearings from the date of one master hearing until the individual hearing. There's about a one-year gap. And suddenly at the individual hearing, there's an issue that the petitioner is, in fact, firmly resettled in Armenia. And the whole direction of the testimony switched. The judge, in fact, required us to address the firm resettlement first before even being allowed to argue whether or not he suffered past persecution in Azerbaijan. At the end of the hearing, did the government argue that he had firmly resettled in Armenia? They did not, Your Honor. They just submitted it on the record, Judge. That's all they did. You know, in their brief, obviously they do argue that the judge was right and that there was firm resettlement. But at the conclusion of the hearing, the government just submitted it on the record. If we were to disagree with the IJ on the firm resettlement and to reverse on that point, do we need to remand under Ventura for findings of whether or not there has been persecution in Azerbaijan? Your Honor, I submit that the court can, in fact, find a past persecution in this case based on the record before it. Has the IJ found past persecution in Azerbaijan? The IJ did not, Your Honor. Then don't we have to remand on that question under Ventura? Well, Your Honor, the IJ found that the petitioner had not suffered past persecution in Azerbaijan. However, I submit that based on the evidence... You say he did make that finding or he's lying? Yes, he did make that finding, Your Honor. I apologize. He did make that finding. Where's that finding? Basically, Your Honor, what he did, he just found that the petitioner had firmly resettled so he was barred from asylum. But then he goes on further and says that even if there was no firm resettlement, the petitioner failed to prove that he was persecuted because these were just basically... Now, can you point me to where he finds that there's no past persecution in Azerbaijan? Let me refer you to the admin record. If you look on page 43 of the admin record... I'm now with you. To the top of page 43? Exactly, Your Honor. Okay, I'm with you. So I guess you argue that there was no firm resettlement. Okay. Again, that all this was civil war and this is just nonsense. I think the whole world knows that basically the flee of the entire Armenian population from Azerbaijan in 1990 was based on ethnic cleansing programs. In fact, this court itself and Andrei Hasyan, Your Honor, specifically found that the Armenians were in fact kicked out of Azerbaijan because of ethnic issues, ethnic cleansing programs, and whether or not the government was in fact directly involved with these programs, it's clear the government had no interest in protecting the Armenians. Up to today, there's almost virtually no Armenians who reside in Azerbaijan. So a judge's finding that despite the fact that all these Armenians were killed and kicked out of Azerbaijan is just based on civil war, it just doesn't make sense. And it goes clearly against this very court's finding in Andrei Hasyan, which has, as I'm sure Your Honors have read, very identical facts to the case that we have before us today, both factually and legally. Okay. So I think just based on this court's research You would ask us to grant the petition in remand for exercise of Yeah, I know that It's otherwise eligible. If there's past persecution, then that means there's a presumption of future persecution if you're to return. Right. Then the government's burden to rebut that presumption with evidence of changed conditions so that he could relocate. Exactly. And there's nothing. They offered nothing. They offered nothing, and I don't think that they can't be They offered country reports, which clearly don't have any showing that he can relocate anywhere in Azerbaijan. Right. And again, his finding, the fact that he didn't ask the government to bear the burden I know that this decision came out after the judge's decision, but this court in Maharaj V. Gonzalez clearly sets forth as the DHS that there is a burden of showing that the that there was an actual offer of firm resettlement of residents, of permanent residents and just the judge cannot just presume that this person was firmly resettled in the country just because he lived there or just because he's Armenian. What do you say is required for a firm offer of resettlement? I would suggest, Your Honors, that at the very least an individual be granted work authorization, be allowed to register and have a residence, have a house there. The Petitioner clearly testified, and based on his credible testimony, he lived in Armenia for five or six months. He remained with relatives. He was never granted any kind of status. He was also He also testified, didn't he, that he went to stand on line to get some kind of propiska or something like that? I'm not sure, Your Honors. And then he gave up because it was too long and he saw other people weren't getting it. I agree with you, Your Honor, and that's a good point. Is it a question of the government has an offer outstanding and he's got to apply for it? Is that enough, where he doesn't apply? That's not enough, Your Honor. In fact, this court, Your Honor, in Andryasan, held that the mere fact that a Petitioner does not go and seek residence in a country is not in and of itself his failure to ask for status. But here he was in Armenia, right? Yes, he was in Armenia for five or six months. What did the government of Armenia have to do, hunt him down and say, here is a piece of paper that says you can live here for a while? No, Your Honor, I don't think it goes that far, but Then what do they have to do? Well, had he applied, Your Honor, and had he received status, I believe then at that point there would be firm resettlement. But he didn't apply. He didn't apply, but he also said, you know he He said he didn't apply because he thought other people were not getting it. Correct, Your Honor. And Is that the normal way of determining whether somebody has the right to do something? Well, I don't think so. No, Judge Duffin, logically, you know, reasonable minds may defer, but the point is that he also, in addition to saying that he's firm resettlement regulations require that he apply? Absolutely not, Your Honor. That the applicant apply? Absolutely not, Your Honor. In fact, if I may address Judge Duffin's question, that's a very good point, Judge, but this court in Moharaj, which is an en banc decision, in fact the fact that Moharaj would give a lot more support to finding a firm resettlement than what we have here. In Moharaj, the petitioner went to Canada, lived there for a certain amount of time, was given government assistance, the children went to public school. They even applied for asylum from Canada, but before a decision was made, they left and came to the United States because the courts found that they thought that the grass would be greener on the other side. So they come here, they completely don't even wait to see what happens with the asylum application, and this court found out that there's no firm resettlement. Still, despite those facts, the judge must demand that DHS submits evidence of a clear offer of permanent residence. The mere fact that someone tried to apply or did not try to apply, that does not carry the DHS's burden. And it may also just refer the court's attention that the DHS, the government itself, submitted documents, evidence that said that the army did not even have citizenship laws at the time, did not even have asylum laws at the time that the petitioner was there. So whether or not had he remained there for a few years and eventually obtained residence is really a nonissue. That's irrelevant to the facts before us. The citizenship, though, was Armenian. No, Your Honor. His citizenship was not Armenian. His ethnicity was Armenian. He was of Armenian ethnicity. Well, when his children were baptized, when they were born, whatever it was, he put down father's nationality Armenian. Sure. And nationality, Your Honor, in the Soviet Union, if I may refer the court's attention to that, this was not raised in the brief, but it's just basically there's a report by the U.N. Refugee Agency and Nationality that indicates that the laws of the former Soviet Union, the Soviet doctrine used the term nationality in the ethnic sense, and citizenship and nationality were two different concepts. So basically in the former Soviet Union, just because you're of an Armenian nationality. Everyone was a citizen of the Soviet Union. That's why, right? I'm sorry, Your Honor? Everyone was a citizen of the Soviet Union. That's correct, Your Honor. All right. Exactly. But then you could have been a citizen of the Soviet Union, a native of Azerbaijan, but of Armenian ethnicity, and they would put nationality Armenian. But that does not mean that you're a citizen of Armenia. Okay. I think we have your argument in hand. Let's hear from the government, and we'll give you a chance to respond. Fair enough. Thank you. May it please the Court, Zoe Heller on behalf of the Attorney General. The record provides substantial evidence in support of the agency's determination that Mr. Harutinov had firmly resettled in Armenia prior to entering the United States in 1998. There is also substantial evidence. What's the evidence? Well, the immigration judge relied on six things in making his determination that there was evidence either that Mr. Harutinov was either a citizen or fully entitled to return to that country. The six things that evidence. Well, what's the standard under the regulations and under our case law? For review, a firm resettlement is under substantial. What does the government have to show to establish that somebody has firmly resettled? Well, counsel mentioned the Maharaj case, which was issued subsequent to briefing in this case and, obviously, subsequent to the immigration judge's decision. So, again, that case was not brief, but in that case, this Court held that in determining whether or not an alien had firmly resettled in a country that they would have the first, it would be on DHS, to show that there was an offer. Now, that offer can be established either by showing direct evidence of either some sort of travel document, some sort of citizenship or asylum privilege, but also in Maharaj, the Court, as Your Honor, I'm sure is well aware, permitted indirect evidence of sufficient force in order to draw the inference that the alien had firmly resettled. Okay. So you don't contend that there's anything here that would satisfy the first category, do you? No. There wasn't no direct evidence. Mr. Hrudnoff testified that he didn't have an Armenian passport, but he did have a red passport or a Soviet passport, which did permit him to enter into Armenia. And, in fact, that is that same passport. Was Armenia a separate country at that time? Armenia became a separate country in 1991, I believe, and he entered there in 1993 and stayed there for approximately five to six months. And addressing the passport issue, and then I can go back and address the six factors that the immigration judge relied on, but that passport permitted Mr. Hrudnoff, as a citizen and permanent, as a resident of former Azerbaijan, to actually seek, and he was fully entitled to seek, citizenship in Armenia, as evidenced by the State Department's report that was entered into evidence by DHS. Was he required to apply for citizenship once he landed foot in Armenia? No. He could have also sought out refugee status as well. But did he have to do that in order to be firmly resettled? Well, subsequently, that would be more evidence that he had been firmly resettled had he obtained that citizenship. But, again, the firm resettlement can be established either by proving that someone is a citizen entitled to permanent residence or some other evidence of a permanent resettlement in that country. So what's the evidence? What are the six factors that you rely upon? Okay. The six factors that the immigration judge relied upon in basically finding that Mr. Hrudnoff had not met his burden of refuting the immigration judge's finding was that, one, upon arrival in this country, in completing his I-94 arrival document, he indicated that his citizenship was Armenian. And then DHS also submitted an affidavit from the Los Angeles deputy port director, which set forth that on arrival, when an alien submits this I-94, it's checked against the passport. They verify that the information that was filled out is correct. And then here, Mr. Hrudnoff was granted entering into the United States for several months. That information is then sent into a DHS center, so to speak, where that gets entered into a database. And the generation for Mr. Hrudnoff from that database established that his COC, or country of origin, was Armenian. Yeah. But we view his testimony as credible, correct? Right. There was no adverse credibility. So everything he says, we're supposed to assume is true? Yes. Therefore, when he explains why he checked off Armenia and says, well, what I thought they were asking about was nationality, let me describe to you what happened to me and what my relationship is with Armenia, we're supposed to believe him. Correct. But that was, I mean, assuming his testimony is true, that his explanation was that it was nationality, you know, again, the immigration judge is entitled, as the fact finder in this case, to also rely on the other evidence in discounting that and making a decision. Well, wait a minute. But the other evidence is he says, I checked that box. Here's why I checked that box. The truth is, da-da-da-da-da, we're supposed to believe his testimony, including as to why he checked that box. Well, again, Your Honor, there was other evidence that was submitted into the record, apart from this I-94. The birth certificates from his children established that. Well, that's what he said. I mean, he said my children were born in Armenia. Correct. And that's not inconsistent. And he says they were born in Armenia because we were so concerned about what might happen to them were they born in Azerbaijan. My wife and I went there. She stayed for a little while after the birth. I returned immediately. Well, his testimony is that the children, that his wife gave birth to the children in Armenia because of the infant mortality rates, not because he feared persecution in Azerbaijan. No, his testimony is that I feared that something bad might happen to those children in Azerbaijan. But that's neither his or theirs, whether he was resettled in Armenia. But the clear story that he tells is, my children were born in Armenia because we thought they had a better chance of survival. My wife goes there for the birth. I accompany her. As soon as the children are born, I return to work in Azerbaijan. Correct. The children were born there, and then they left. And, again, on the certificate itself, it says that the parents are from Armenia. And as well as on Mr. Rutan's asylum application, although he himself refers to himself as stateless, he puts his wife's ethnicity as Armenian. Right. And she's, quote, half Armenian, correct? Right. The family is now living in Russia. No, but her ethnicity is half Armenian, correct? Yes, and half Russian. Yeah. And now they currently live, to my knowledge today, in Russia. Let me follow up on Judge Paez's question. Assuming that firmer settlement was available to them in Armenia, that's an assumption, but assuming that it was, is he required to firmly resettle? That is to say, even if there were no line at all, and he could have resettled easily in Armenia, is he required to resettle in Armenia? No. Clearly, there is no law that requires somebody to resettle in the country. The regulation just goes to the finding that an alien had firmly resettled. And, again, citizenship is just one factor there. You don't have to have established your citizenship in a country. Again, here, as evidenced by the State Department letter, as well as the country report, that was submitted into evidence by DHS. It shows that, again, as a holder of an ex-Soviet passport, he was entitled to gain citizenship. That was a right that was available. And as Judge Duffy pointed out, you know, taking the alien's testimony as true. He did not go through with that because there were long lines. Right. But my question is, even if there had been no line at all, was there any requirement under the firm resettlement doctrine that he go and seek whatever papers there were? No. But, again, it's the offer. DHS met its burden of showing that there was an offer. And, again, then the burden shifts to the alien to rebut that. What was the offer? Again, with the ex-Soviet passport here and the immigration judge taking into the testimony, as well as the DHS, the State Department report, and the country report, he was entitled, fully entitled if you in particular were. So the entitlement is the offer? Yes. I would argue that the you don't have to. Where do you draw that out of our case law? There are some 1990 cases that do. Unfortunately, they're unpublished, so they are not cited before this Court. Don't cite them. Don't rely on them. My question is, what case in our case law or by the Supreme Court supports that statement you just made? Well, I can make a distinguish. Distinguish it from the cases where you have an offer. That's not my question.  You made an affirmative statement. I want you to back it up. Well, as I said, that is how I would read the statute or ask this Court to read the statute. There is no case directly in point from the circuit which says, you know, that if you are entitled and you have, you know, the documents, then that constitutes an offer. However, in distinguishing the cases where you have either remanded or found no resettlement, that was when the alien only had a temporary opportunity. In other words, it was asylum, but, you know, that asylum or refugee status expired at a certain time. Let's assume that instead of going to Armenia, he had gone with his family to Canada. And let's assume that it's pretty clear that under Canadian law, he could have sought asylum in Canada based on what had happened to him in Azerbaijan. That is to say, he's entitled if he wants to. He stays there for a little while, but comes to the United States. Has he firmly resettled in Canada because he was eligible for asylum in Canada? No, Your Honor, and that goes to the Maharajahs. But again, that was the difficulty I have with the argument that even if he was entitled to stay in Armenia and entitled to some sort of legal status in Armenia, the fact that he was entitled doesn't mean that he's resettled. I do know your point, but then I know that my time is up. But again, in this case, the immigration judge did make the alternative finding, should this Court find, which we argue that although he had firmly resettled, if this Court should find that there is non-substantial evidence supporting a firm resettlement, again, the immigration judge also made the alternative finding that Mr. Kharitonov did not establish past persecution in either of the three countries that he claimed asylum relief from, Azerbaijan, Armenia, and Russia. In addition, the immigration judge also found there was not sufficient evidence that it was more likely than not that he would be. Which was the country that the IJ directed that he should be removed to? There were two countries, Your Honor. One was Azerbaijan, or in the alternative, Armenia. So those were the two countries that the immigration judge ordered Mr. Kharitonov removed to. And again, the evidence of the ---- If we were to disagree with the IJ's finding that he had not firmly resettled in Armenia, then we get to the question of whether or not the alternative disposition. And I gather if we were to affirm on that, he would go back to Azerbaijan? He could go back to either country, assuming we get the DHS has to procure the travel documents. If we didn't agree with the alternative disposition, that is, we concluded that substantial evidence compels just the opposite conclusion, that he suffered past persecution in Azerbaijan, then could he still be removed to Armenia? Yes, Your Honor. Because again, the immigration judge did make the alternative finding as to those three countries, Armenia, Azerbaijan, and Russia. And Mr. Kharitonov's testimony about what happened to him in Armenia during his five- to six-month stay in 1993 was that he was called names. And there's substantial case law that, you know, harassment, discrimination do not rise to the level of persecution. So even if we were to conclude that he was entitled to asylum from Azerbaijan, he could still go back, the government could still remove him to Armenia? Yes, again, it was an alternative. Even in the absence of a firm resettlement in Armenia? Well, again, the firm resettlement would be a bar. It's a complete bar to... No, my question is this. Okay. Assume that we were to disagree with the IJ as to firm resettlement, and we say he's not firmly resettled in Armenia. We then get to the question of whether or not he has suffered past persecution in Azerbaijan. Assume, again assume, that we find the IJ was wrong on that point, too, and that he did suffer past persecution in Azerbaijan. Am I hearing you correctly that you say he nonetheless could be removed to Armenia? Yes, Your Honor, because... Why is that? Because he himself sought asylum relief from Armenia. Well, I understand that, but if he's not firmly resettled in Armenia, why can we send him to some place where he's never been firmly resettled in the absence of some showing of discrimination in Armenia? That is to say, under your theory, if that's right, someone who's discriminated against in, say, Azerbaijan, passes through Canada, could have resettled but did not, then comes to this country, and we hold that he has been discriminated against, there's been past persecution in Azerbaijan, under your theory, we can send him to Canada. Well... But that's not the law. Well, no, Your Honor, again... Because he never firmly resettled in Canada. No, but here, again, the two countries at issue are Azerbaijan and Armenia, and him... And I'm asking you to assume that he did not firmly resettle in Armenia. But he sought asylum from Armenia. That was an alternative relief that he sought. Well, of course he did, because he was worried he was going to be found firmly resettled in Armenia. Well, and as the applicant for that relief, you know, the immigration judge went through the merits finding on that. But that becomes a relevant proposition for him only if he has firmly resettled there. If he's not firmly resettled there, whether or not he's been discriminated against in that country makes no difference whatsoever. Well, again, I would argue that, you know, because as the proponent of asylum from that country, he was claiming that he was entitled to... I don't know. I was surprised at your comment. Oh, I'm sorry. I haven't heard this argument before. It's a very unique case. He actually sought asylum in Armenia. Yes, Your Honor. He sought asylum in Armenia or sought asylum from Armenia? In Armenia, is what you said. He sought... To quote the immigration judge here, in fact, he said he thought it ironic that, you know, he's claiming that he's not a citizen of Armenia but yet was seeking asylum from Armenia. Or I can quote it for you. Was that in his application? If you go to his... If we look at his application, did his application actually check the box for... Did he actually write Armenia in the application or did the IJ say, oh, you want... You also want asylum from Armenia? Well... What happened? Well, during the merits hearing, there is the attorney has asked, as well as the client, what countries are you seeking asylum from and what forms of relief are you seeking? And, again, here during the, you know, the length of the hearing, Mr. Harutinov claimed that he was seeking asylum, withholding and cap protection from both, I believe, Armenia and Azerbaijan and Russia. You know, now I'm curious if whether or not because the IJ had this idea that he had firmly resettled in Armenia that the IJ said, oh, you probably want to seek asylum from Armenia, as well. He took testimony about... I have to go back and check the record. I don't remember, but now I'm beginning to think that in the initial application, he only sought asylum from Azerbaijan. But I don't know. We've really extended your time. I didn't really mean to. Okay, Your Honor. Thank you. And, again, we would ask that this Court deny the petition for review. Okay. Thank you. Let's have a minute for response. The government went well over, but it wasn't quite the government's fault. We encouraged the government to go over. Your Honor, with all due respect, I'm not sure why the government's trying so hard to just ignore the finding in Muharraj in this case. I mean, it's very, very obvious that the... Well, I know why they're trying to ignore it. Well, I mean, it's just blatant ignorance of a law that's basically good law and has not been overturned. Clearly in this case... It's the non-black opinion. Yeah, I mean, clearly in this case, Your Honor, the immigration judge failed to demand that the government bear its immediate burden of proof that this person was firmly resettled in Armenia. And if you look at the record, from the outset, the immigration judge was convinced, and to him was basically a presumption that this person was from Armenia. Why? Because he has an I-94 in his own handwriting saying that he's Armenian, and also because of a printout from the INS. Again, Your Honor, in that case, had the petitioner put U.S.A. instead of Armenia, would we have granted him U.S. citizenship just because he put U.S.A. instead of Armenia on there? The judge completely took everything out of context. And I find it ironic that he finds it ironic that the petitioner is seeking asylum from Armenia. He's, in essence, forced to... I was put in a position at the hearing, because the judge asked me, is he seeking asylum from Armenia? I said, no, Your Honor, he has no status in Armenia. He only lived there for five, six months. He never obtained status, so it doesn't make sense that he would be seeking asylum from Armenia. In that case, why not asylum from Georgia or Estonia, where he also went? And the judge basically put the petitioner in a position that, are you sure? Because he implied that, you know, I'm going to find that he was firmly resettled there, so maybe you should think about applying for asylum from Armenia also. And only at that point did the petitioner, just to preserve his rights, said that, yes, you know, even though I have no status in Armenia, but, yes, you know, I was called a Muslim, I was called a Turk there, I was just called racial slurs, and my life may have been in danger that he even made that comment. And that's the only reason that he applied for asylum. There was no application for asylum from Armenia at the outset in his application in his I-589. And also, you know, just one last point. I don't want to beat a dead horse, but if you look at this court's decision in Andriostian, even assuming that there's no firm resettlement, still the government would have discretion to deny asylum based on the fact that this person lived in Armenia or Russia or what have you. However, we don't need to show proof of harm. All that's proof of persecution, all that's needed for the government to not be able to basically exercise that discretion and deny asylum is to show, if I may refer the Court's session to page 10 of the Andriostian decision, second, the regulation permits a discretionary denial of asylum only if the petitioner would not face harm or persecution. So basically, this Court specifically said that by mentioning both harm and persecution. I think we're on – I think we've got that case in the hands. Sure. Thank you very much.  Thank you for your time, Your Honor. The case of Herutinov v. Mukhesi is now submitted for decision. The next case on the argument calendar is – again, I'm not sure I'm going to be able to pronounce this correctly – Zorabian v. Mukhesi.
judges: W. Fletcher, Paez, Duffy